UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Kimberly Eldredge**

      **v.**                       Case No. 08-cv-188-PB
                                        Opinion No. 2009 DNH 191

**Walgreens Co.**

## MEMORANDUM AND ORDER

Kimberly Eldredge, a former employee of Walgreens, has sued Walgreens under the Americans with Disabilities Act ("ADA"). Eldredge alleges that Walgreens violated the ADA when it refused to reinstate her as an assistant manager at Walgreens while she was under light-duty work restrictions related to a back injury. Walgreens has moved for summary judgment on several grounds, alleging that Eldredge has failed to satisfy her burden of proof. I grant Walgreens' motion because Eldredge cannot establish that she is disabled within the meaning of the ADA.

## I.  BACKGROUND

Eldredge was employed as an assistant manager at various Walgreens stores throughout New Hampshire and Massachusetts beginning in 1990.  (Def.'s Statement of Material Facts, Doc. No.

12-3, ¶¶ 13-14.)[1]  In February 2002, Eldredge injured her lower

back while constructing a seasonal display at Walgreens, and was

diagnosed with back strain.  Following a leave of absence,

Eldredge returned to work with "light duty" restrictions until

her physician released her to full-time, full-duty work in

August 2002.  (Compl., Doc. No. 1, ¶¶ 10-11; Def.'s Statement of

Material Facts, Doc. No. 12-3, ¶¶ 25-27.)

------------------------------------------------------------

[1] Walgreens argues that this court must accept as true all
facts contained in its statement of material facts because
Eldredge failed to include her own statement of material facts
when she objected to Walgreens' motion for summary judgment, in
violation of Local Rule 7.2(b)(2).  (See Def.'s Reply Mem. in
Further Supp. of Mot. for Summ. J., Doc. No. 23, at 2-3.)  Local
Rule 7.2(b)(2) states:

> A memorandum in opposition to a summary judgment motion
> shall incorporate a short and concise statement of
> material facts, supported by appropriate record
> citations, as to which the adverse party contends a
> genuine dispute exists so as to require a trial.  All
> properly supported material facts set forth in the
> moving party's factual statement shall be deemed
> admitted unless properly opposed by the adverse party.

D.N.H. R. 7.2(b)(2).  Although Eldredge did not include a
separate statement of material facts with her objection, she
identified disputed material facts and supported her version of
the disputed facts in the memorandum she submitted in support of
her objection.  (See Pl.'s Mem. of Law in Supp. of Mot. for Summ.
J., Doc. No. 16-2.)  This is minimally sufficient.  I will not
read Rule 7.2(b)(2) so narrowly as to warrant the automatic
admission of Walgreens' asserted facts on the basis that Eldredge
did not assert her arguments in a separate document formally
titled "statement of material facts."

Eldredge's back pain returned in August 2003, forcing her to leave work at a Walgreens in Londonderry, New Hampshire on unpaid disability leave.  Eldredge's physician determined that she required lumbar fusion surgery, and she underwent surgery in October 2003.  (Compl., Doc. No. 1, ¶ 12; Def.'s Statement of Material Facts, Doc. No. 12-3, ¶¶ 28, 32.)  Following a period of recuperation, Eldredge's physician allowed her to return to work with "light duty" restrictions in August 2004.  (Compl., Doc. No. 1, ¶ 13.)  These restrictions allowed Eldredge to "resume full time work duty" with the limitations that she not lift more than 20 pounds or engage in repetitive bending.  (Def.'s Statement of Material Facts, Doc. No. 12-3, ¶¶ 28-29; Def.'s Ex. 12, Doc. No. 12-6.)  Eldredge met with Walgreens District Manager Anna O'Herren in August 2004 to agree on the job functions of the assistant manager position that she would be able to perform while under the restrictions of her physician's release.  (Def.'s Statement of Material Facts, Doc. No. 12-3, ¶ 30.)  In September 2004, Eldredge returned to work as an assistant manager at Walgreens, this time at a store in Manchester, New Hampshire, where she was able to work without exceeding the restrictions of her physician's release.  (Id. ¶ 31.)

-3-

Within several weeks of returning to work, Eldredge experienced difficulty performing her job due to her injury. Eldredge's physician placed more restrictive conditions on her work activities, including a five-pound weight-lifting limit and instructions to further limit bending and stretching.  (Id. ¶ 35; see Def.'s Ex. 14, Doc. No. 12-6.)  Once again, Eldredge met with O'Herren to determine which of the functions of the assistant manager position she would be able to perform under these restrictions.  After about five weeks of attempting to work under the five-pound weight restriction, Walgreens informed Eldredge that the restrictions made it impossible for her to effectively perform her job as an assistant manager.  (Def.'s Statement of Material Facts, Doc. No. 12-3, ¶¶ 37-39.)  Eldredge's physician was also concerned that she might exacerbate her injury if she continued to work, and provided Eldredge with a letter stating that she should remain out of work until further notice.  (Id. ¶ 41; see Def.'s Ex. 15, Doc. No. 12-6.)  Eldredge went on unpaid leave in October 2004, and remained out of work for over a year. (Def.'s Statement of Material Facts, Doc. No. 12-3, ¶ 42.)

In July 2005, Eldredge contacted Lora Wolfe, a Walgreens Employee Relations Representative, and informed her that she had been released by her physician to return to work, subject to

-4-

light-duty work restrictions.  The restrictions were similar to
the restrictions appearing in her August 2004 work release:  a
maximum twenty-pound weight-lifting limit, and instructions to
alternate between sitting, standing, and walking every thirty
minutes.  (See id. ¶¶ 44-45; Def.'s Ex. 16, Doc. No. 12-6.)  On
August 18, 2005, Eldredge had a telephone conversation with
O'Herren about her return to work.  In that conversation,
O'Herren informed Eldredge that Walgreens was unable to
accommodate Eldredge with the restrictions placed upon her by her
physician, as she would be unable to perform the essential
functions of any store position.  (Def.'s Statement of Material
Facts, Doc. No. 12-3, ¶ 51.)  O'Herren memorialized this
conversation in an email to Eldredge on August 23, 2005, in which
she reiterated that Walgreens was unable to accommodate Eldredge
at that time, and instructed Eldredge to contact her when the
restrictions had been lifted.  (See Def.'s Ex. 18, Doc. No. 12-
6.)  Eldredge was terminated in November 2005.[2]

_____

    [2] The parties dispute whether Eldredge was actually
"terminated" in the sense required by the ADA.  Walgreens
contends that Eldredge was simply "administratively coded off of
Walgreens' computer system because she had been out on disability
leave for a one-year period," and argues that Eldredge was free
to return to work once her physician's physical restrictions had
been lifted.  Walgreens asserts that this is a standard policy
that applies to any Walgreens employee who takes a leave of
absence that exceeds one year.  (See Def.'s Statement of Material

On March 31, 2006, Eldredge's counsel wrote to Walgreens' counsel and asserted that Walgreens had violated the ADA when it effectively terminated Eldredge at the culmination of her one-year period of leave on November 5, 2005.  (See Def.'s Ex. 27, Doc. No. 12-6.)  Upon Walgreens' continued refusal to reinstate Eldredge as a Walgreens employee, Eldredge filed a disparate treatment claim under the ADA alleging that Walgreens terminated her because it "regarded her as disabled or because she had a record of disability."  (Compl., Doc. No. 1, ¶ 21.)

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the

---

Facts, Doc. No. 12-3, ¶ 65.)  Eldredge counters that this constituted an adverse action within the meaning of the ADA. (See Def.'s Ex. 27, Doc. No. 12-6, at 2.)  Because I determine that Eldredge is not entitled to relief because she cannot prove that she is disabled, I need not decide whether she has offered sufficient evidence of an adverse employment action.

nonmoving party to "produce evidence on which a reasonable finder
of fact, under the appropriate proof burden, could base a verdict
for it; if that party cannot produce such evidence, the motion
must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95
F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.  **ANALYSIS**

The ADA prohibits discrimination against a "qualified
individual with a disability because of the disability of such
individual in regard to . . . terms, conditions, and privileges
of employment."  42 U.S.C. § 12112(a) (2009).  A "qualified
individual" under the ADA is one "able to perform the essential
functions of [her position] with or without reasonable
accommodation."  Ward v. Mass. Health Research Inst., Inc., 209
F.3d 29, 33 (1st Cir. 2000).  To establish a prima facie case of
disparate treatment under the ADA, a plaintiff must prove "(1)
that [she] is disabled within the meaning of the ADA, (2) that
[she] was able to perform the essential functions of the job with
or without reasonable accommodation, and (3) that [she] was
discharged or adversely affected, in whole or in part, because of

her disability."[3]  Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d
76, 82 (1st Cir. 2008).  If the plaintiff establishes her prima
facie case, the employer must come forward with evidence of a
legitimate, non-discriminatory reason for its decision, at which
point the plaintiff must prove that the "non-discriminatory
justification is mere pretext cloaking discriminatory animus."
See Freadman, 484 F.3d at 102.

In order to prove that she is "disabled" within the meaning
of the ADA, a plaintiff must demonstrate that she "(a) has a
physical or mental impairment that substantially limits one or
more of her major life activities; (b) has a record of such
impairment; or (c) is regarded as having such an impairment."
Ruiz, 521 F.3d at 82 (citing Bailey v. Georgia-Pacific Corp., 306
F.3d 1162, 1166 (1st Cir. 2002); see also 42 U.S.C. § 12102(2)
(2009); 29 C.F.R. § 1630.2(g) (2009).  Walgreens argues in its
motion for summary judgment that Eldredge cannot establish that

---

[3] Eldredge does not assert a failure to accommodate claim.
(See Compl., Doc. No. 1, ¶¶ 21-23.)  Even if Eldredge had argued
that Walgreens violated the ADA in failing to accommodate her
alleged disability, however, her claim would fail, as a plaintiff
still must prove that she was disabled within the meaning of the
ADA in order to survive summary judgment on an accommodation
claim.  See Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d
91, 102 (1st Cir. 2007).  Because I find that Eldredge has not
sufficiently established that she was "disabled" under the ADA,
it would be futile to allow her to amend her complaint to assert
an accommodation claim.

she is disabled under this standard.  (See Def.'s Mem. of Law in Supp. of Mot. for Summ. J., Doc. No. 12-2, at 18-19.)  Eldredge responds by contending that she meets the ADA's test of disability because she was "regarded as" disabled by Walgreens. (See Pl.'s Objection to Def.'s Mot. for Summ. J., Doc. No. 19, at 17-18.)

An employee can demonstrate that her employer regarded her as disabled where:  "(1) [the employer] mistakenly believe[d] that [the employee] ha[d] a physical impairment that substantially limit[ed] one or more major life activities, or (2) [the employer] mistakenly believe[d] that an actual, non-limiting impairment substantially limit[ed] one or more major life activities."  Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 117 (1st Cir. 2004) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).[4]  Eldredge admits that she

---

[4] While I note that the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3553-55 (2008) ("ADA Amendments Act"), became effective on January 1, 2009 and expanded the definition of "disability" beyond the Supreme Court's interpretation in Sutton and Toyota Motor Mfg., Kentucky., Inc. v. Williams, 534 U.S. 184 (2002) (discussed infra), numerous courts have held that the ADA Amendments Act does not apply retroactively.  See, e.g., Thornton v. UPS, Inc., No. 08-2162, 2009 U.S. App. LEXIS 24809 (1st Cir. Nov. 12, 2009); E.E.O.C. v. Agro Distribution, LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009); Fournier v. Payco Foods Corp., 611 F.Supp. 2d 120 n.9 (D.P.R. 2009);  Geoghan v. Long Island R.R., No. 06-cv-1435, 2009 U.S. Dist. LEXIS 30491, at *8-9 (E.D.N.Y. Apr. 9, 2009); see also

suffers from an actual impairment, but argues that it is non-limiting. Thus, the relevant inquiry is whether Walgreens mistakenly believed that this impairment "substantially limit[ed]" her ability to engage in at least one major life activity.

Eldredge has not sustained her burden of proof with respect to her "regarded as" claim for two reasons. First, Eldredge fails to identify a "major life activity" that Walgreens allegedly regarded as being substantially limited by her impairment. Supreme Court precedent suggests that "regarded as claims under the ADA require an even greater level of specificity than other claims" and, at a minimum, an employee must identify the major life activity on which her "regarded as" claim is based. Ruiz, 521 F.3d at 84 (citing Sutton, 527 U.S. at 489-91). Nowhere in her complaint or her objection to Walgreens' motion does Eldredge identify the major life activity on which her claim is based. Thus, Walgreens is entitled to summary judgment on this basis alone.

---

Rivers v. Roadway Exp., Inc., 511 U.S. 298, 313 (1994)(finding that where Congress passes an interpretative or restorative statute, its "intent to reach conduct preceding the 'corrective' amendment must clearly appear"). Since the relevant conduct in the present case occurred between February 2002 and March 2006, I need not consider whether the ADA Amendments Act alters the analysis of Eldredge's claim.

Second, Eldredge cannot prevail even if I generously construe her pleadings to state that Walgreens regarded her as substantially limited in her ability to work, the only "major life activity" that could possibly support her claim.  Where the major life activity under consideration is work, "the inability to perform a single, particular job does not constitute a substantial limitation."  29 C.F.R. § 1630.2(j)(3)(i).[5]  Rather, an employee must demonstrate

> not only that the employer thought that [she] was impaired  in [her] ability to do the job that [she] held, but also that the employer regarded [her] as substantially impaired in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities.

Sullivan, 358 F.3d at 117 (quoting Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999)); see 29 C.F.R. § 1630.2(j)(3)(i).

In the present case, the only evidence in the record that even arguably supports Eldredge's claim that Walgreens regarded her as being unable to work is O'Herren's August 23, 2005 email.

---

[5] Both the Supreme Court and the First Circuit have assumed, without deciding, that work is a major life activity within the meaning of the ADA.  See, e.g., Sutton, 527 U.S. at 492; Sullivan, 358 F.3d at 115 (1st Cir. 2004); Whitlock v. Mac-Gray, Inc., 345 F.3d 44, 46 n.1 (1st Cir. 2003); see also 29 C.F.R. § 1630.2(i).  For the purpose of summary judgment I will assume, as the Supreme Court and the First Circuit have, that work qualifies as a "major" life activity under the ADA.

In that email, O'Herren asserted that the limitations outlined by
Eldredge's physician in July 2005 restricted her from performing
"the essential functions of any store position."  (Def.'s Ex. 18,
Doc. No. 12-6, ¶ 3.)  Presumably, Eldredge offers the email in an
effort to establish that Walgreens regarded her as being unable
to work in a broad range of jobs in various classes.  The
difficulty with this argument, however, is that it is based on a
mistaken premise.  "The regarded as prong of the ADA exists to
cover those cases in which myths, fears and stereotypes affect
the employer's treatment of an individual."  <u>Ruiz</u>, 521 F.3d at
83.  Where, therefore, an employer's perception of an employee's
impairment is based "not on speculation, stereotype, or myth, but
on a doctor's written restrictions," a finding that the employee
was "regarded as" disabled is inappropriate; consequently, an
employee "may not rely exclusively on her employer's recognition
or implementation of the restrictions imposed by her own
physician to establish a regarded as claim."  <u>Id.</u> at 86 (citing
<u>Wooten v. Farmland Foods</u>, 58 F.3d 382, 386 (8th Cir. 1995)); <u>see</u>
<u>also</u> <u>Lusk v. Ryder Integrated Logistics</u>, 238 F.3d 1237, 1241
(10th Cir. 2001) (no evidence that employer regarded employee as
disabled where it believed that employee's impairment prevented
him from performing a job that required lifting in excess of his

physician's restrictions, but did not misperceive the extent of the employee's limitation); <u>Brunko v. Mercy Hosp.</u>, 260 F.3d 939, 942 (8th Cir. 2001) (employer did not regard employee as disabled when it asserted that she would be incapable of performing "any staff nursing work at the hospital," as this perception "was not based on any myths or archaic attitudes about the disabled," but employee's own treating physician's recommendations).  Here, Eldredge relies entirely upon an email that merely recites Walgreens' understanding of and inability to implement the restrictions that her own physician prescribed.  O'Herren's email contains no trace of speculation, myth, or stereotype regarding Eldredge's diagnosed condition; rather, it merely advises that Eldredge could not return to work <u>while under those particular restrictions</u>.  (<u>See</u> Def.'s Ex. 18, Doc. No. 12-6, ¶ 3.)  In fact, O'Herren's email implies that Eldredge <u>would</u> be able to return to work as soon as those restrictions were lifted.  (<u>See</u> Def.'s Ex. 18, Doc. No. 12-6, ¶ 3 ("I advised you that the most important aspect at this point is your health and well-being and for you to contact me once your restrictions have been lifted.").)  A reasonable juror could not possibly find that this email was based upon the "myths, fears, and stereotypes" surrounding Eldredge's condition when it merely addressed the

restrictions that Eldredge herself presented as facts, particularly in lieu of Walgreens' apparent willingness to reinstate her in the absence of those restrictions.  <u>See</u> <u>Ruiz</u>, 521 F.3d at 83; <u>Lusk</u>, 238 F.3d at 1241.  As such, in the absence of any additional evidence, Eldredge's "regarded as" claim must fail.


## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Walgreens' motion for summary judgment (Doc. No. 12) is granted.  The clerk is directed to enter judgement and close the case.

SO ORDERED

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

December 11, 2009

cc:  Jared P. O'Connor, Esq.
     Gregory A. Manousos, Esq.
     Mark M. Whitney, Esq.